IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE M. JANTZ,                          :

    Plaintiff,                             :

v.                                        :

                               Civil Action No. GLR-11-3154

UNITED STATES OF AMERICA,     :

    Defendant.                             :

                                         :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant United States of America's (the "Government") Motion to Dismiss or, in the Alternative, for Summary Judgment.  (ECF No. 29).  This is an action brought against the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2012), in which Plaintiff Nicole M. Jantz alleges that Marjorie A. Hanna, then a member of the Maryland Air National Guard, negligently struck her vehicle while operating a government vehicle at a gas station on Fort George G. Meade, Maryland ("Fort Meade").

The issue before the Court is whether Ms. Hanna was acting within the scope of her employment with the Government at the time of the accident when she falsely procured the government vehicle to go to a medical appointment on Fort Meade.  The motion has been fully briefed and no hearing is necessary.  <u>See</u>

Local Rule 105.6 (D.Md. 2011). For the reasons that follow, the Government's Motion is granted.

## I. BACKGROUND[1]

In December 2008, Ms. Hanna, a Master Sergeant in the Maryland Air National Guard, was stationed at the Maryland Air National Guard Headquarters at Martin State Airport in Baltimore County, Maryland, and served as a Human Resources Assistant.[2] She reported directly to Chief Master Sergeant ("CMSgt.") Phyllis Aubrey. Her official duties were administrative and rarely required her to leave Martin State Airport, except to travel to the Fifth Regiment Armory in Baltimore, Maryland.

On December 2, 2008, Ms. Hanna struck Ms. Jantz's 2001 Ford Explorer while driving a government-owned 2008 Dodge Avenger sedan. The two were waiting for an available gas pump at the MacArthur Shoppette gas station on Fort Meade. Ms. Hanna used the government vehicle that day to travel to the Kimbrough Army Medical Clinic to participate in laboratory tests related to treatment for a blood clot that developed while she was deployed overseas. (Sedlock Dep. at 16:9–21, 22:18–23:6, Dec. 3, 2012, ECF No. 32-2). Unbeknownst to CMSgt. Aubrey, Ms. Hanna had

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the Government's Motion, and are viewed in the light most favorable to the Plaintiff.

[2] Ms. Hanna, who is now known as Marjorie Sedlock, has since retired from the Maryland Air National Guard.

obtained the government vehicle from the Recruiting Department to drive to the Clinic on Fort Meade.  (Id. at 45:15–46:2).

Recruiting Department vehicles were only available for official business relating to recruitment or to anywhere in which the military directed a service member to go.  Ms. Hanna procured the government vehicle by representing to Master Sergeant ("MSgt.") Robert Sweeney, the Recruiting Department's supervisor, that she needed it for "official duty."  (Sweeney Dep. at 15:2–6, Oct. 23, 2012, ECF No. 32-4).  At the time he agreed to let Ms. Hanna take a government vehicle, MSgt. Sweeney was unaware that Ms. Hanna did not receive orders to travel to Fort Meade for a medical appointment that day.  Following the accident, CMSgt. Aubrey heavily questioned Ms. Hanna's use of the government vehicle and prohibited her from using any government vehicles.

Ms. Jantz instituted this action against the Government under the FTCA on November 6, 2011, alleging that Ms. Hanna acted within the scope of her employment, and had negligently operated the government vehicle, at the time their vehicles collided.  On January 30, 2012, the Government filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  (ECF No. 11).  The Court, however, denied the Government's Motion without prejudice, granting Ms. Hanna limited discovery on the issue of whether Ms. Hanna's trip was personal or in furtherance of

government business.   (ECF No. 18).   Following discovery, the Government again moves to dismiss or, alternatively, for summary judgment.

## II.   DISCUSSION

### A.   Standard of Review

The Government's Motion is styled as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, as a motion for summary judgment.   A Rule 12(b)(1) motion to dismiss challenges a court's authority to hear the matter.   See Davis v. Thompson, 367 F.Supp.2d 792, 799 (D.Md. 2005).   When the scope-of-employment issue is determinative of jurisdiction and the underlying merits of an FTCA claim, however, dismissal under Rule 12(b)(1) is inappropriate.   Kerns v. United States, 585 F.3d 187, 196 (4th Cir. 2009).   This Court will thus assume it has jurisdiction and treat the Government's Rule 12(b)(1) Motion as a direct attack on the merits under Federal Rule of Civil Procedure 56(a).   See id. at 193.

Rule 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(a).   A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

B.    <u>Analysis</u>

    1.    **The Medical Appointment**

Ms. Jantz argues the Government is liable for the damage to her vehicle because Ms. Hanna acted within the scope of her employment when the accident occurred.  Specifically, Ms. Jantz asserts that Ms. Hanna's medical appointment was part of an ongoing treatment for a work-related injury in the interest of maintaining fitness to serve and, as a result, was furthering the Government's business in traveling to Fort Meade.  This position is inapposite with Maryland law.

The FTCA is a limited waiver of sovereign immunity, allowing private parties to sue individuals who act on the Government's behalf, but only to the extent the individuals "act[ed] within the scope of [their] office or employment."  28 U.S.C. § 1346(b)(1); <u>Gould v. U.S. Dep't of Health & Human Servs.</u>, 905 F.2d 738, 741 (4th Cir. 1990) (citations omitted).  In the military context, acts within the scope of employment are carried out in the line of duty.  28 U.S.C. § 2671.

This Court has long held that the phrase "line of duty" is functionally synonymous with state <u>respondeat superior</u> principles.  <u>See Strong v. Dyar</u>, 573 F.Supp.2d 880, 886 (D.Md. 2008) (deciding "line of duty" under Maryland law); <u>Paly v. United States</u>, 125 F.Supp. 798, 805 (D.Md. 1954) ("[T]he phrase 'line of duty' in the [FTCA] . . . does not expand the phrase

'scope of employment' as generally understood in the legal doctrine of respondeat superior."); see also Ross v. Bryan, 309 F.3d 830, 834 (4th Cir. 2002) (applying Virginia respondeat superior law to the scope of employment of a military service member and refusing to extend scope of employment to all incidents that occurred while the service member was commuting to his duty station).

Accordingly, under Maryland's principles of respondeat superior, an employee's acts are considered within the scope of employment if they were "in furtherance of the employer's business and authorized by the employer." S. Mgmt. Corp. v. Taha, 836 A.2d 627, 638 (Md. 2003). "Authorized" does not mean authority expressly conferred by the employer, "but whether the act was such as was incident to the performance of the duties entrusted to the employee by the employer." Blue Rider Fin., Inc. v. Harbor Bank Md., No. ELH-11-3101, 2013 WL 1196204, at *6 (D.Md. Mar. 22, 2013) (quoting Sawyer v. Humphries, 587 A.2d 467, 470 (Md. 1991)) (internal quotation marks omitted).

Ms. Hanna's medical appointment at Fort Meade was not incident to the performance of her administrative duties at Martin State Airport. Ms. Hanna's duties included assembling promotion packages for officers and certain personnel, serving as the casualty assistant representative, and data entry. (Sedlock Dep. at 13:18–14:11, 44:2–45:4). All of Ms. Hanna's

administrative duties could be performed at her duty station, (Aubrey Dep. at 24:18–25:11, Oct. 16, 2012, ECF No. 32-3), and none of those duties required the use of a government vehicle. (Id. at 25:14–26:16).   Although Ms. Hanna's administrative duties occasionally required her to travel to the Fifth Regiment Armory, they never required her to travel to Fort Meade or to any other military installation.   (Sedlock Dep. at 14:15–15:5). Under these circumstances, it cannot be said that Ms. Hanna acted in furtherance of her administrative duties by traveling to a medical appointment.   Medical appointments simply are neither an official duty nor incident to the administrative duties entrusted upon Ms. Hanna by the Government.

Nonetheless, Ms. Jantz avers that active-duty service members are "required to meet scheduled appointments as directed . . . [and to report] any medical condition that hinders duty performance to the proper military medical authority."   (Pl.'s Mem. Resp. to Def.'s Mot. to Dismiss at 9, ECF No. 32-1) (citation and internal quotation marks omitted).   She argues the Government's medical standards left Ms. Hanna with "no choice but to go to her appointment."   (Id.)   In doing so, Ms. Jantz suggests that service members act within the line of duty when they seek medical treatment by sheer virtue of the fact that one of the military's objectives is to be "medically acceptable for military life."   (Pl.'s Mem. Resp. to Def.'s Mot. to Dismiss at

8) (citation and internal quotation marks omitted).   This

argument is unavailing.

Notwithstanding prevailing federal law to the contrary,[3] the

facts do not support such a determination.   In their testimony,

Ms. Hanna, CMSgt. Aubrey, and MSgt. Sweeney distinguished

between personal medical appointments and those ordered by the

military. (See Sedlock Dep. at 47:8–48:1; Aubrey Dep. at 40:10–

41:1; Sweeney Dep. at 15:2–13).   No supervisor or doctor ordered

Ms. Hanna to attend the medical appointment on Fort Meade.

(Sedlock Dep. at 26:4-11, 47:20-48:1; Aubrey Decl. ¶ 5, ECF No.

11-3).   Indeed, Ms. Hanna even admitted that, to her knowledge,

she was not being examined for her fitness for duty at that

---

[3] Because the FTCA also limits liability to the extent a
private entity would be liable under the same circumstances,  28
U.S.C. § 1346(b)(1), federal courts have been reluctant  to
conclude that a service member acts within the scope of
employment by virtue of the unique authority the military holds
over its service members.  See, e.g., Hamm v. United States, 483
F.3d 135, 138–39 (2d Cir. 2007) (refusing to "hold the military
potentially liable under respondeat superior for any wrongful
conduct by a military employee outside of work hours that may
subject the employee to military discipline, at least where the
conduct is, in some way, 'in furtherance of the duties he owes
to his employer'") (citation omitted)); Hartzell v. United
States, 786 F.2d 964, 968 (9th Cir. 1986) (explaining that "a
soldier traveling between duty stations is not acting within the
scope of employment notwithstanding the military's general right
to control his activities" (citation and internal quotation
marks omitted)); Bissell v. McElligott, 369 F.2d 115, 119 (8th
Cir. 1966) ("[T]he unique control which the Government maintains
over a soldier has little if any bearing upon determining
whether his activity is within the scope of his employment.").
Ms. Jantz's argument represents a "drastic expansion of federal
liability . . . inconsistent with the plain language of the
FTCA." Hamm, 483 F.3d at 139.

particular medical appointment.   (Sedlock Dep. at 27:16–28:2).

The military did not require Ms. Hanna to go the medical

appointment, let alone to drive or to use a government vehicle.

With no order from a commanding officer, and no connection to

her administrative duties, the Court concludes that Ms. Hanna

acted beyond the scope of her employment when she traveled to

the medical appointment on Fort Meade.

   **2.   The Procurement of the Government Vehicle**

   Ms. Jantz also argues MSgt. Sweeney authorized Ms. Hanna to

use the government vehicle.   Service members are prohibited from

using government vehicles for personal use.   (See Aubrey Dep. at

40:12-14) ("[E]veryone knows that you don't take a military

vehicle for a personal appointment.").   To obtain a government

vehicle, service members must get authorization from their

supervisor and request a vehicle from the motor pool.   (Id. at

48:2-11).   Ms. Hanna knew the procedure but failed to obtain

authorization.   (See id. at 40:3-4, 8-9) (noting that Ms. Hanna

"did not have a legitimate excuse for taking the [vehicle]," and

"knew that [obtaining a government vehicle through the

Recruitment Department] was not the procedure").

   Further, upon seeing that no government vehicles were

available in the motor pool, Ms. Hanna obtained a government

vehicle from the Recruitment Department instead, which could

only be used for recruitment purposes or for "anything the

military told you you had to be at." (Sweeney Dep. at 13:1–2). She had done so after misrepresenting to MSgt. Sweeney that she needed the vehicle for "official duty." (Id. at 15:2–6). In reality, Ms. Hanna was not a recruiter in the Recruitment Department, did not intend to use the government vehicle for recruitment purposes, and did not receive orders from CMSgt. Aubrey or anyone else in her chain of command to travel to Fort Meade for her medical appointment. (Sedlock Dep. at 45:5–18). By contravening proper procedure to falsely acquire a government vehicle that she was not required to use, Ms. Hanna also acted beyond the scope of her employment.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Government's Motion for Summary Judgment (ECF No. 29) is GRANTED. A separate Order follows.

Entered this 22nd day of April, 2013

/s/
_____
George L. Russell, III
United States District Judge